**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **HENRY ULIOMEREYON JONES,** | § | |
| **Reg. No. 46810-112,** | § | |
| **Petitioner,** | § | |
| | § | |
| | § | **EP-19-CV-254-DB** |
| | § | |
| **WARDEN BERGAMI; ICE, El Paso &** | § | |
| **West Texas, D. CHEADLE, ICE,** | § | |
| **Los Angeles (Deportation Proceedings),** | § | |
| **Respondents.** | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Henry Uliomereyon Jones asks the Court to intervene in his behalf and order

Respondent Warden Bergami to consider him for placement in a halfway house or residential reentry

center (RRC) for the maximum permissible amount of time before his release from custody.   Pet'r's Pet.

9, ECF No. 1.  Jones explains Warden Bergami has already denied his request for RRC placement based

on an Immigration and Customs Enforcement (ICE) detainer.  *Id.*, at 1.  After due consideration, the

Court will deny Jones' "Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" because it

appears from its face that his claims are unexhausted and, in the alternative, that he is not entitled to § 2241

relief.

**BACKGROUND**

On September 27, 2007, a federal grand jury sitting in the Central District of California returned a

33-count indictment in cause number 07-CR-1075-PA charging Jones and two others with mail fraud,

wire fraud, securities fraud, contempt, witness tampering, and unlawful monetary transactions.   The

charges arose from a four-year scheme by Jones and his co-defendants to defraud investors they had

solicited to participate in a coal mining venture and the sale of 20,000 tons of gold between Israel and the

United Arab Emirates.

Jones was extradited from Hong Kong and arrived in the United States for his initial appearance on December 13, 2007. Trial began on June 24, 2008, and ended on July 11, 2008, when the jury returned guilty verdicts on all counts. On April 3, 2009, the trial court sentenced Jones to 240 months' imprisonment in the custody of the Bureau of Prisons (BOP) followed by three years' supervised release. The court also ordered Jones to pay a $1,800 special assessment and restitution in the amount of $28,058,310. The Ninth Circuit Court of Appeals affirmed the conviction. *United States v. Jennings*, 434 F. App'x 670, 673 (9th Cir. 2011).

Jones is currently confined at the La Tuna Federal Correctional Institution in Anthony, Texas. His projected release date is February 18, 2025. Pet'r's Pet., Ex. 1.

Jones claims that Warden Bergami abused his discretion when he denied Jones RRC placement. *Id.*, at 3. He also maintains that his status as a legal permanent resident of the United States makes him eligible for cancellation of removal. *Id.*, at 4. He suggests that the Court "can invoke its plenary power to correct the egregious exercise of ICE and BOP power that is so capricious as to violate the constitution . . ." *Id.* He also asks that the Court ignore the ICE detainer and "ORDER the BOP in good faith to consider on an individualized basis, using the five factors set forth in 18 U.S.C. Secon [sic] 3621(b) plus take into account the language in 18 U.S.C. Section 3624(c)(6)(C) [and grant] him the maximum amount of time in the RRC to provide the greatest likelihood of [his] successful reintegration into the Community." *Id.*, at 9 (quotations and citations omitted).

## APPLICABLE LAW

A writ of habeas corpus under 28 U.S.C. § 2241 provides the proper procedural vehicle for a prisoner to attack "the manner in which a sentence is executed." *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000). "[T]he proper respondent to a habeas petition is 'the person who has custody over [the

petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). "Habeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if condoned, result in a complete miscarriage of justice.'" *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). Hence, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States" to obtain relief. 28 U.S.C. § 2241(c) (2012).

During its initial screening of a habeas corpus petition, a reviewing court must accept the petitioner's allegations as true. 28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It must also evaluate a petition presented by pro se petitioner under more a lenient standard than it would apply to a petition submitted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

## ANALYSIS

### A. Exhaustion

Jones concedes he has not exhausted his administrative remedies through the BOP's administrative review process. Pet'r's Pet. 7, ECF No. 1. He argues the Court should excuse this omission "due to futility." *Id.*

A petitioner seeking § 2241 habeas relief must first exhaust all administrative remedies which might provide appropriate relief before seeking judicial review. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam); *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). Exhaustion means "proper

exhaustion," including compliance with all administrative deadlines and procedures. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion under the Prison Litigation Reform Act).

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller*, 11 F.3d at 62 (internal citations omitted). Exceptions may be made only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility of administrative review. *Id.*

Jones has an administrative review process available to him. The BOP uses a multi-tiered administrative remedy program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, the inmate must attempt to resolve the issue informally with the prison staff. *Id.* § 542.13(a). Then, if the inmate cannot resolve the complaint informally, he must file a formal written administrative remedy request on a BP-9 form directed to the prison warden. *Id.* § 542.14. Any adverse decision by the warden must be appealed to the appropriate regional director by filing a BP-10 form. *Id.* § 542.15(a). The final step in the administrative review process is an appeal to the Office of General Counsel on a BP-11 form. *Id.* If an inmate does not receive a response within the time allotted, he may consider the absence of a response a denial at that level and proceed to the next level. *Id.* An inmate may seek relief in federal court only after he has exhausted all levels of the administrative review process. *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

Jones contends that the BOP has implicitly predetermined his challenge through a 2008 statement by former Director Harley Lappin, claiming "our research . . . showed for most inmates greater than six

months in a halfway house or RRC was not productive." Pet'r's Pet. 7, ECF No. 1. But the mere fact that Jones believes the BOP will deny him administrative relief does not make proceeding through the process patently futile. *See Green v. Meese*, 875 F.2d 639, 641 (7th Cir. 1989) ("No doubt denial is the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion.").

Thus, Jones has not met his burden of showing that the Court should apply an exception to the exhaustion requirement. Hence, the Court concludes Jones has not exhausted and dismissal is warranted on this basis alone. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies).

But even if Jones had properly exhausted, the Court would still not grant him § 2241 relief.

## B. Authority of the Bureau of Prisons to Place Inmates

The Court notes that two statutes govern the discretion of the BOP to place an inmate in a particular facility: 18 U.S.C. § 3621(b), which addresses the imprisonment of a convicted person, and the Second Chance Act of 2007, Pub. L. 110–199, 122 Stat. 692 (Apr. 9, 2008), which provides for post-imprisonment rehabilitation services.

Section 3621(b) grants the BOP the authority and discretion to designate the place of confinement. Under § 3621(b), the BOP:

> may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b) (2012). In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and (5) any

pertinent policy statement issued by the Sentencing Commission[.]" *Id.*

The Second Chance Act directs "a shift from policing those on parole to rehabilitating them," and places on the "parole system . . . an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism. *Id.* The Act also addresses placement in a community corrections facility such as a halfway house. 18 U.S.C. § 3624(c) (2012). It grants the BOP Director the discretion to place a prisoner in a community corrections facility for up to twelve months, instead of limiting that time to six months as permitted by the prior law. *Id.* The Act authorizes the Director, "to the extent practicable, . . . to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.* It also directs the BOP to issue new regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* § 3624(c)(6).

The BOP adopted regulations implementing the Second Chance Act, codified at 28 C.F.R. §§ 570.20–.22, effective October 21, 2008. Both the statute and the regulations instruct the BOP to decide on the amount of time a prisoner should spend in residential reentry center "on an individual basis." *Id.*; 28 C.F.R. § 570.22.

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any particular place. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner,* 515 U.S.

472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).[1]

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'" *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *accord Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *see also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege . . ., denial of such relief cannot violate a substantive interest protected by the Due Process clause."); *cf. Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process.'") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442

---

[1] The statutory language in 18 U.S.C. § 4082(b) was re-codified through Pub. L. 94-473, Title 2 II, § 212(a)(2), Oct. 12, 1984, and is currently found at 18 U.S.C. § 3621(b).

U.S. 1, 11 (1979)).

After reviewing Jones's petition and the applicable statutes, the Court finds that the BOP has exclusive authority and discretion to determine if and when to assign Jones to a halfway house or RRC. The Court further finds the record does not support a conclusion that Warden Bergami abused his discretion when he denied Jones RRC placement.

## C.  Authority of the Court Regarding ICE Detainers

Jones complains the ICE detainer prevents his RRC placement.   But the ICE detainer does not place a Jones "'in custody' for the purposes of 28 U.S.C. § 2241."   *Zolicoffer v. United States DOJ*, 315 F.3d 538, 541 (5th Cir. 2003).   Consequently, the ICE offices in El Paso, West Texas, and Los Angeles, and D. Cheadle, are not his custodians and are not proper respondents in this matter.

Furthermore, the Court does not have jurisdiction under § 2241 to consider any challenges Jones may have to the ICE detainer.   *See id.*, at 540–41.   And "the REAL ID Act has divested [district] courts of jurisdiction over § 2241 petitions attacking removal orders."   *Rosales v. BICE*, 426 F.3d 733, 736 (5th Cir. 2005).   If an immigration court enters a final order of removal against Jones, his sole means of obtaining judicial review is through a petition for review filed in the appropriate court of appeals.   *Id.* Indeed, the Court has not authority to ether "invoke its plenary power to correct . . . ICE . . ." or ignore the ICE detainer.   Pet'r's Pet. 4, 9, ECF No. 1.

Because of the ICE detainer, the BOP likely assigns Jones a Public Safety Factor (PSF) of "deportable alien."   *Zamarripa-Torres v. Bureau of Immigration & Customs Enf't*, 347 F. App'x 47, 48 (5th Cir. 2009).   This designation requires the BOP to house Jones in an institution with a security level of no less than "low," like FCI La Tuna.   *Id.*   A halfway house or RRC is a "minimum security" facility.

*Id.* An inmate who cannot be housed in a "minimum security" facility is ineligible for RRC placement. Thus, Jones is ineligible for RRC placement based on his PSF.

## CONCLUSIONS AND ORDERS

Consequently, the Court finds that Jones has not only failed to exhaust his administrative remedies, but also has no constitutional or statutory right to RRC placement. The Court concludes, therefore, that it appears from the face of Jones's petition and other pleadings that he is not entitled to § 2241 relief.

The Court, therefore, enters the following orders:

**IT IS ORDERED** that Petitioner Henry Uliomereyon Jones' "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

SIGNED this ____2ᴺᴰ____ day of October 2019.

DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE